# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POLYGUARD PRODUCTS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INNOVATIVE REFRIGERATION ) <br> SYSTEMS, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 17-1230 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

This matter is before the Court on Defendant Innovative Refrigeration Systems, Inc.'s ("IRS") Motion to Stay or Alternatively, to Dismiss, (Docket No. [26]), its Memorandum in Support, (Docket No. [29]) and Plaintiff Polyguard Products, Inc.'s Partial Consent to Defendant's Motion to Stay and Request for Amended Schedule, (Docket No. [30]). IRS alternatively seeks all of the following: (1) a stay of this action in favor of a related declaratory judgment suit brought by the manufacturer of the alleged infringing product against Plaintiff in the U.S. District Court for the Northern District of Texas, Dallas Division, *see I.S.E.L., LLC v. Polyguard Products, Inc.*, Civ. No. 3:17-cv-03218-M; (2) dismissal on the basis of improper venue, or alternatively, transfer of venue to the U.S. District Court for the Western District of Virginia, where it is headquartered, or the U.S. District Court for the Eastern District of Pennsylvania, where the only operations it conducts in Pennsylvania are located; or, (3) dismissal for failure to state a claim. (Docket No. 27). In response, Plaintiff partially consents to the stay of the claims in its Complaint in favor of the litigation in the Northern District of Texas <u>if</u> Defendant agrees to certain stipulations but also "requests" additional time to respond to the remaining motions due to its preference to investigate and attempt to settle a

1

potential claim it may bring against Defendant related to a "New Product" that it started selling <u>after</u> it received Plaintiff's Complaint and is supplied by a different manufacturer. (Docket No. 30). Plaintiff suggests that this process will take up to forty-four (44) days. (*Id.*). After careful consideration of the parties' arguments and for the following reasons, Defendant's motion is granted to the extent that this Court will exercise its broad discretion pursuant to 28 U.S.C. § 1404(a) and transfer this matter to the U.S. District Court for the Western District of Virginia, forthwith.

At the outset, shortly after receiving and reviewing Defendant's Motion, this Court ordered Plaintiff to respond by January 10, 2018. (Docket No. 28). The Court proceeded in this fashion because it is directed "to secure the just, speedy, and inexpensive determination of every action and proceeding," FED. R. CIV. P. 1, and believed upon a review of the case that the stay and transfer issues were ripe for an expeditious ruling. In particular, the caselaw supporting the requested stay is well settled. *See In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). Further, the affidavit of Defendant's Vice President John Stoklosa sets forth that it maintains no operations in this District, is headquartered in Lyndhurst, Virginia, and is no longer selling the alleged infringing product which is the subject of this suit, or using the challenged promotional brochure, (*see* Docket No. 29-2). Defendant's motion also contained a statement certifying that counsel had met and conferred with Plaintiff's counsel in a good faith effort to resolve these issues but that they were unable to agree to a resolution. (Docket No. 26 at 2).

As noted, Plaintiff filed a brief response which did not substantively address any of the issues raised by Defendant's Motion and includes a number of "requests" for extensions of time which do not conform to this Court's Practices and Procedures. (*See* Docket No. 30). To this end, § III.A.4 of same provides, in pertinent part, that:

> The Court is <u>not</u> inclined to grant extensions for the filing of motions or briefs. Any request for an extension must take the form of a written motion (accompanied by a proposed order), and the motion must demonstrate <u>good cause</u> and include a statement regarding opposing counsel's position on an extension.

*Practices and Procedures of Judge Nora Barry Fischer*, § III.A.4, *available at:* http://www.pawd.uscourts.gov/sites/pawd/files/PandPJudgeNoraBarryFischer.pdf (eff. 9/19/17). Here, Plaintiff neither filed a written motion, nor included a statement regarding the position of opposing counsel on the requested extensions. (*See* Docket No. 30). Instead, Plaintiff states that it partially consents to a stay in favor of the declaratory judgment action against it in the Northern District of Texas but "requests" seven days to finalize a stipulation with Defendant. (Docket No. 30). Plaintiff further "requests" an additional thirty (30) days to negotiate a settlement of a potential claim against Defendant from its sales of a "New Product" supplied by a different manufacturer, all of which have occurred <u>after</u> the filing of this lawsuit and about which Plaintiff has no other information, aside from Stoklosa's declaration of January 3, 2018. (*Id.*). If those negotiations fail, Plaintiff "requests" another seven (7) days to file its Responses to Defendants' motions to transfer and dismiss. (*Id.*). Plaintiff then supplies the Court with a convoluted proposed Order incorporating all of its various requests. (Docket No. 30-1). All told, Plaintiff essentially seeks a <u>six-week</u> extension of time to respond to the pending defense motions so that its counsel can conduct a Rule 11 investigation into whether it can assert claims against Defendant based on the recent sale and promotion of the "New Product," which are not pled in the present Complaint and before the Court. *See e.g., Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (citations omitted) (in a patent case, "[a] reasonable presuit investigation [ … ] requires counsel to perform an objective

evaluation of the claim terms when reading those terms on the accused device."); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004) ("we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.").

It is this Court's opinion that Plaintiff has failed to demonstrate "good cause" for the requested extension, particularly as to the transfer of venue motion which it should have had no difficulty responding to by January 10, 2018, as this Court had directed. *See Practices & Procedures* at § III.A.4. In this regard, prior to filing its Complaint, counsel had a duty to conduct a pre-suit investigation and by filing same on September 21, 2017, represented that its factual contentions as to the propriety of venue including that Defendant sold products and services in this District and hired and maintained employees in Aliquippa, (*see* Docket No. 1 at ¶ 3), "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* FED. R. CIV. P. 11(b)(3). If Plaintiff had conducted such a pre-suit investigation,[1] as it was bound to do, Plaintiff should have been easily able to respond to Stoklosa's assertions in his declaration that Defendant neither conducts any operations nor has any employees in this District but it failed to do so as this Court ordered. Further, the investigation that its counsel desires to conduct now has no connection to the venue dispute as it relates to a potential new claim against Defendant from its sales and promotion of a New Product, all of which occurred <u>after</u> this suit was filed. Hence, Plaintiff's briefing does not establish good cause for its otherwise procedurally deficient request for an extension and the Court sees no reason to further delay the inevitable transfer of this case.

---

[1] Plaintiff also had an additional three months since the filing of the Complaint in September of 2017 to continue

With that background, the Court exercises its discretion to first address the meritorious motion to transfer pursuant to the discretionary transfer statute, 28 U.S.C. § 1404(a), and to leave to the transferee court the remaining disputes as to the stay.[2] *See In re: Homwmedica Osteonics Corp.*, 867 F.3d 390, 404, n.8 (3d Cir. 2017) (court has discretion to address convenience factors prior to deciding contested issues of jurisdiction and venue). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is well established that this Court retains "broad discretion" to transfer venue when justice so requires after weighing the private and public factors set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). *See also Ogundoju v. Attorney General of U.S.*, 390 F. App'x. 134, 137 n.2 (3d Cir. 2010); *in re Nintendo*, 756 F.3d at 1365-66. The relevant private interests include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of the books and records. *Jumara*, 55 F.3d at 879. The cited public interests include: (1) the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id.*

---

its investigation.

[2]  The Court notes that Plaintiff alleges that "[v]enue is proper in this District under 28 U.S.C. § 1391(b)(1) because Innovative resides in this District." (Docket No. 1 at ¶ 6). Defendant contends that venue is improper under the general venue statute as it does not reside here as that term is defined under 28 U.S.C. §1391(b)(1). (Docket No. 29 at 12-14). Although this is a patent case, the parties do not address the implication of the patent venue statute, 28 U.S.C. § 1400(b), or the recent decisions interpreting same, including the Supreme Court's opinion in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1517, 197 L. Ed. 2d 816 (2017) and the Federal Circuit's opinion of *In re: Cray, Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). Given the lack of briefing on these issues, the Court declines to resolve the
5

In this Court's estimation, the relevant private and public factors strongly favor a transfer of this action to the U.S. District Court for the Western District of Virginia. To this end, Plaintiff's forum preference is given little weight as it has no apparent connection to this District since it is incorporated in Oklahoma and headquartered in Texas. (Docket No. 1 at ¶ 2). While Defendant is incorporated in Pennsylvania, it has refuted the unsupported assertion that it maintains operations or employees in this District; rather, its headquarters is located Lyndhurst, Virginia, which is in the Western District of Virginia, and performs only limited work by a small number of employees in the Eastern District of Pennsylvania. (Docket No. 1 at ¶ 3; 29-2). The parties have not presented any evidence demonstrating that witnesses are located here, or that anything more than tangential infringing acts by Defendant, if any, took place in this District. (*See* Docket No. 1; 29). In this regard, the parties agree that the manufacturer of the alleged infringing product is based in Jacksonville, Florida. (Docket Nos. 29, 30). They are also close to stipulating to stay this action in favor of the declaratory judgment action involving that party in the Northern District of Texas. (*Id.*). Although the location of books and records is typically neutral, in patent actions, courts have considered that most of the evidence comes from the infringer, making it more convenient to litigate in the Virginia forum. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotation omitted) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

Similarly, Defendant's presence in the Western District of Virginia and absence of operations here tilts several of the public factors in favor of transfer, including the local interest in the

---

alleged improper venue and transfers this matter under the discretionary transfer statute, 28 U.S.C. § 1404(a).

controversy, and the many practical considerations which will reduce the costs of litigation if it takes place in Virginia, rather than here.  (*See* Docket No. 29).  With respect to court congestion, this Court is presently operating with six judicial vacancies (out of ten seats), three of which have been empty for more than four years, while the Western District of Virginia has a single vacancy as a seat was vacated in December of 2017.  *See Administrative Office of U.S. Courts, Current Judicial Vacancies, available at:* http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited 1/12/2018).  The remaining factors appear neutral, but the Court believes that a discretionary transfer is in the interests of justice here.

      An appropriate Order follows.

                                  *s/Nora Barry Fischer*
                                  Nora Barry Fischer
                                  United States District Judge

Dated: January 12, 2018

cc/ecf: counsel of record